**SIGNED this 29th day of September, 2026**

**Rachel Ralston Mancl**
**UNITED STATES BANKRUPTCY JUDGE**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re<br><br>JACK ROBERT THACKER JR.,<br><br>Debtor. | No. 2:25-bk-50237-RRM<br>Chapter 11 Subchapter V |
| ARETE WEALTH, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>JACK ROBERT THACKER JR.,<br><br>Defendant. | No. 2:25-ap-05009-RRM<br>Adversary Proceeding |

**MEMORANDUM**

APPEARANCES:

Jason S. Shade, Esq.
801F Sunset Drive, Suite 2
Johnson City, Tennessee 37604
*Attorney for Plaintiff*

Maurice K. Guinn, Esq.
Post Office Box 1990
Knoxville, Tennessee 37901
*Attorney for Defendant*

**Rachel Ralston Mancl, United States Bankruptcy Judge**. Plaintiff Arete Wealth, Inc., asserts that its claim against defendant Jack Robert Thacker Jr. should be excepted from discharge under 11 U.S.C. § 523(a)(2) and (6). Mr. Thacker contends that Arete Wealth's complaint must be dismissed because it was not "filed within 60 days after the first date set for the § 341(a) meeting of creditors" as required by Fed. R. Bankr. P. 4007(c). Arete Wealth admits not filing its complaint by the Rule 4007(c) deadline but insists it enjoys the extension that Mr. Thacker consented to provide for other creditors. Arete Wealth posits that by entering the agreed order between Mr. Thacker and those other creditors "this Court unequivocally extended the deadline for creditors like Arete to submit dischargeability complaints." The court did not. The complaint will be summarily dismissed. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

I.

Mr. Thacker filed his voluntary petition commencing the underlying chapter 11 case on March 6, 2025. Schedule E/F lists Arete Wealth as an unsecured creditor having an unliquidated and disputed claim in the amount of $5 million. The Notice of Chapter 11 Bankruptcy Case issued by the clerk of court that same day sets forth deadlines for filing certain complaints, proofs of claim, and objections to exemptions. Specially, as required by Fed. R. Bankr. P. 2002(f)(1)(F) and 4007(c), the Notice informed all creditors of the deadline for filing a complaint to except a debt from discharge under 11 U.S.C. § 523(a)(2), (4), or (6). In this regard the pertinent part of Section 8 of the Notice states:

> **Deadline to file a complaint objecting to discharge or to challenge whether certain debts are dischargeable (see line 11 for more information):**
>
> • if you assert that the debtor is not entitled to receive a discharge of any debts under 11 U.S.C. § 1141(d)(3), the deadline is the first date set for hearing on confirmation of the plan. The court or its designee will send you notice of that date later.
>
> • if you want to have a debt excepted from discharge under 11 U.S.C § 523(a)(2), (4), or (6), **the deadline is: 6/9/25.**

Section 11 of the Notice titled "Discharge of debts" reiterates that "[i]f you believe that a particular debt owed to you should be excepted from the discharge under 11 U.S.C. § 523(a)(2), (4), or (6),

you must file a complaint and pay the filing fee in the bankruptcy clerk's office by the deadline." The certificate from the Bankruptcy Noticing Center evidences the Notice was sent to Arete Wealth by first class mail on March 9, 2025.

The only contested matters in the bankruptcy case involved Mr. Thacker and creditors represented by attorney Anthony Steele. Mr. Steele filed notices of appearance on behalf of Terry and Sharon Vaughn, Don and Marla Lair, Kent and Nancy Crow, Thomas and Diann Elliott, and Darrell and Joan Vincent. Mr. Steele's clients were then or had been engaged in arbitration before the Financial Industry Regulatory Authority (FINRA) with Mr. Thacker, his former investment company, and other individuals associated therewith. Mr. Steele appeared for the Vaughns and the Lairs on March 21, 2025, and thereafter filed motions for relief from the automatic stay on their behalf on April 2, 2025. The motions requested that the Vaughns be permitted to confirm their FINRA arbitration award and that the Lairs be permitted to move forward with their FINRA arbitration. Mr. Thacker, though his attorney Maurice Guinn, opposed the motions. Mr. Guinn stated in the responses filed on behalf of Mr. Thacker that "[c]entralization of the claims resolutions in this Court is in the best economic interest of the bankruptcy estate, creditors and the Debtor," and "estate funds will be greatly reduced, if not exhausted, if the estate must hire attorneys to defend the 14 remaining FINRA proceedings." A preliminary hearing on those two contested matters was held on April 29, 2025, at which time the parties agreed to a final evidentiary hearing on June 5, 2025. The order setting the hearing recited Mr. Steele's announcement that only Mr. Lair would be pursuing the motion the Lairs had jointly filed.

On May 8, 2025, Mr. Steele appeared on behalf of the Crows, the Elliotts, and the Vincents. On May 14, 2025, Mr. Steele filed proof of claims for the Vaughns, the Crows, the Elliotts, the Vincents, and Mr. Lair totaling more than $2.6 million. On May 19, 2025, Mr. Guinn and Mr. Steele each filed motions for entry of agreed orders. Mr. Guinn's motion sought approval of an agreement between him and Mr. Steele to reschedule the evidentiary hearing on the Vaughns' and Mr. Lair's motions from June 5 to July 24, 2025. Mr. Steele's motion sought approval of an agreed order between his clients and Mr. Thacker extending the June 9 deadline for filing § 523(a)(2), (4), and (6) complaints to August 8, 2025. Both agreed orders were entered on May 20, 2025. The timing and the substance of the agreed orders indicated that Mr. Guinn and Mr.

Steele were working to settle the outstanding issues between their clients without incurring the expenses of litigating them. Mr. Guinn said in this motion that "the attorneys for the parties believe it may be in the parties' best economic interest and in the interest of judicial economy … to see if any agreement can be reached about the allowable amounts of the claims …."

On June 3, 2025, Mr. Thacker filed a subchapter V plan prompting the court to enter an order setting a confirmation hearing on July 29, 2025, and fixing deadlines for returning ballots and filing objections to the plan. Mr. Guinn's certificate shows that he served all creditors, including Arete Wealth, with the plan, a ballot, and the court's order setting the confirmation hearing and related deadlines. On June 25, 2025, Mr. Guinn filed a motion stating that "[t]he attorneys for the parties believe it is in the parties' best economic interest and in the interest of judicial economy for the hearing [on the motions for relief from stay] to be continued a second time, until a date after the July 29, 2025 initial confirmation hearing." Accordingly, that same day the court entered the agreed order approved by Mr. Guinn and Mr. Steele rescheduling the evidentiary hearing on the motions to August 28, 2025. Ultimately Mr. Guinn and Mr. Steele reached a settlement on behalf of their clients. On July 17, 2025, Mr. Guinn filed a summary of ballots reporting that the only impaired class under the plan, Class 3 of the unsecured creditors, accepted the plan. The following day Mr. Steele withdrew the Vaughns' and the Lairs' motions for relief from stay. At the hearing on July 29, 2025, Mr. Thacker obtained confirmation of a consensually approved plan. From commencement of the case through plan confirmation, Arete Wealth never participated, not even to file a proof of claim.

On August 7, 2025, Arete Wealth filed the complaint commencing this adversary proceeding requesting that a judgment "in excess of $5 million" be entered against Mr. Thacker and that the judgment be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2) and (6). Arete Wealth's claim arises from the sale by Mr. Thacker of his wholly owned company Center Street Holdings, Inc., to Old Growth Capital, LLC, the predecessor of Arete Wealth. The alleged basis of the claim is that Mr. Thacker fraudulently induced Old Growth Capital to purchase Center Street Holdings by representing that the company and its subsidiary Center Street Securities, Inc., an investment company like Old Growth and Arete Wealth, "'ha[d] no Liabilities except' those 'reflected or reserved against in the Balance Sheet' and those 'incurred in the ordinary course of

business' since the Balance Sheet's date." Arete alleges:

> … Mr. Thacker's representation was never true. Instead, when the parties executed the contract, he knew that CS Securities had massive undisclosed liabilities, including an underlying culture of non-compliance with internal policies, FINRA rules, and other regulations and guidelines. That non-compliant culture included selling customers unsuitable investments, letting accounts languish unmonitored, failing to report product-issuer misconduct, and concealing the downfall of its best investment product. CS Securities was, in short, a ticking timebomb that Old Growth never could have suspected without truthful disclosures.

Mr. Thacker moved to dismiss the complaint because it was filed after the deadline of June 9, 2025. Arete Wealth responded that it had until August 8, 2025, to file its complaint. Because Mr. Thacker did not identify the rule on which his motion was premised, the court construed the motion to dismiss as being made pursuant to Fed. R. Civ. P. 12(b)(6). *See Blake v. Traster (In re Traster)*, No. 12-34042, 2014 WL 1276397, at *3 (Bankr. N.D. Ohio Mar. 27, 2014) (following lead of other courts in assuming that debtor's motion to dismiss a § 523(a)(2) complaint for not being filed within time required by Fed. R. Bankr. P. 4007(c) is made under Fed. R. Civ. P. 12(b)(6)).

In support of his motion to dismiss, Mr. Thacker submitted an affidavit from Mr. Steele. Doing so invoked subsection (d) of Rule 12, incorporated by Fed. R. Bankr. P. 7012(b), stating:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Accordingly, the court entered orders on October 3 and 28, 2025, that respectively informed the parties that it would treat the motion as one for summary judgment under Fed. R. Civ. P. 56, incorporated by Fed. R. Bankr. P. 7056, and that they would have until December 31, 2025, to supplement the record with any material pertinent to the motion.

The record was supplemented by affidavits from Mr. Thacker and Unbo Chung, the compliance officer and general counsel for Arete Wealth. Mr. Thacker's affidavit primarily addresses the merits of Arete Wealth's claim which is not pertinent to the timeliness of the filing of the complaint. Mr. Chung's affidavit likewise largely focuses on the claim, with the only relevant portion to the timeliness of the complaint's filing coming at the end in numbered

paragraphs 10 and 11 wherein Mr. Chung states:

> Arete was aware that Bankruptcy did not allow Thacker to avoid liability for his fraudulent actions, but it was also unclear if Thacker had sufficient assets to justify further litigation, especially in light of the significant costs of starting a separate adversarial proceeding in Tennessee. Although Arete had until June 9, 2025 to file their complaints to determine the dischargeability of debt, prior to that deadline, this Court entered an Order extending that deadline. Specifically, the May 20, 2025 Order (Bnkcy Docket No. 110) stated that "the deadline to file a complaint for determination of dischargeability of debt pursuant to 1 l U.S.C. § 523 in this case, originally set for June 9, 2025 shall be extended for sixty (60) days through and including August 8, 2025."
>
> There was nothing in the Order that limited the relief granted to any specific creditors or otherwise alerted Arete that it could not justifiably rely on that Order. In reliance on that Order, Arete retained bankruptcy counsel in Tennessee and timely filed its Complaint for dischargeability on August 7, 2025. (Docket No. 1).

Docket event no. 110 that Mr. Chung addresses is entry of the agreed order. Mr. Chung does not mention docket event no. 108 that is linked to no. 110 wherein Mr. Steele dockets and identifies the motion for entry of the agreed order as a "Motion For Agreed Order Extending Deadline to File Complaints to Determine Dischargeability of Debt Filed by Anthony R. Steele on behalf of [his named clients]." The linking of the two docket events reinforces that the motion was filed on behalf of Mr. Steele's clients only. Mr. Steele confirms this in his affidavit wherein he states:

> (3) I have appeared in the case of Jack Robert Thacker, Jr. ("Debtor") on behalf of Terry Vaughn and Sharon Vaughn, Kent Crow and Nancy Crow, Darrell Vincent and Joan Vincent, Thomas Elliott and Diann Elliott, and Don Lair.
>
> (4) Attached hereto as Exhibit A is the Motion for Entry of Agreed Order Extending Deadline to File Complaints to Determine Dischargeability of Debt (Doc 108), which I prepared and filed in the Debtor's case on May 19, 2025.
>
> (5) Attached hereto as Exhibit B is the Agreed Order Extending Deadline to File Complaints to Determine Dischargeability of Debt (Doc 110), entered on May 20, 2025.
>
> (6) I prepared and filed the Agreed Order. My clients are identified as the "Unsecured Creditors" in the Motion and the Agreed Order.
>
> (7) The Motion and the Agreed Order were filed to obtain an extension of time for my clients to file complaints to determine dischargeability of my clients' claims pursuant to 11 U.S.C. §523.

> (8) I did not at the time of the Motion and do not currently represent or advocate for any parties other than the parties specifically listed in the Motion For Entry of Agreed Order Extending Deadline to File Complaints to Determine Dischargeability of Debt and the attendant Agreed Order Extending Deadline To File Complaints to Determine Dischargeability of Debt.

The document prepared and filed by Mr. Steele titled "**MOTION FOR ENTRY OF AGREED ORDER EXTENDING DEADLINE TO FILE COMPLAINTS TO DETERMINE DISCHARGEABILITY OF DEBT"** recites:

> COMES **TERRY VAUGHN** and **SHARON VAUGHN**, **KENT CROW AND NANCY CROW, DARRELL VINCENT AND JOAN VINCENT, THOMAS ELLIOTT AND DIANN ELLIOTT, AND DON LAIR,** by and through counsel, (collectively, the "Unsecured Creditors"), pursuant to Local Rule 9072-1 and say as follows:
>
> That the Unsecured Creditors and the Debtor, JACK ROBERT THACKER, JR., by and through counsel, have agreed to the entry of an Agreed Order Extending Deadline to File Complaints to Determine Dischargeability of Debt. A copy of the proposed Agreed Order is attached hereto as Exhibit A.
>
> WHEREFORE, these premises considered, the Unsecured Creditors request the Court enter the Agreed Order Extending Deadline to File Complaints to Determine Dischargeability of Debt attached hereto and submitted herewith.

The agreed order approved for entry by Mr. Steele and Mr. Guinn and prepared by Mr. Steele extending the deadline by an agreement between his clients and Mr. Thacker provides:

> COME **JACK ROBERT THACKER, JR.** (the "Debtor") and **TERRY VAUGHN and SHARON VAUGHN, KENT CROW AND NANCY CROW, DARRELL VINCENT AND JOAN VINCENT, THOMAS ELLIOTT AND DIANN ELLIOTT, AND DON LAIR,** (collectively, the "Unsecured Creditors"), by and through their respective legal counsel, and hereby jointly announce to the Court that the parties have reached an agreement to extend the deadlines for the filing of a complaint for determination of dischargeability of debt pursuant to 11 U.S.C. §523 and are in agreement that the deadline to file such complaints in this case, originally set for June 9, 2025, should be extended for sixty (60) days to August 8, 2025. Accordingly, upon agreement of the parties and for good cause shown, it is
>
> ORDERED, ADJUDGED AND DECREED that the deadline to file a complaint for determination of dischargeability of debt pursuant to 11 U.S.C. §523 in this case, originally set for June 9, 2025 shall be extended for sixty (60) days through and including **August 8, 2025**.

The language in the motion and order does not bear out Mr. Chung's statement that "[t]here

was nothing in the Order that limited the relief granted to any specific creditors." Both documents expressly state that the agreement to extend the deadline is between Mr. Thacker and the nine creditors identified by name in both the motion and agreed order. And while Mr. Chung also states that nothing in the agreed order "otherwise alerted Arete that it could not justifiably rely on the order," he does not specifically state that Arete Wealth relied on the agreed order in allowing the deadline to pass. In fact, there is no evidence concerning how or when Arete Wealth even became aware of the existence of the agreed order. Because it was not a party to the agreed order, the court never notified Arete Wealth that an agreed order extending the deadline for the nine creditors represented by Mr. Steele had been entered. Mr. Steele did not serve Arete Wealth with his motion for entry of the agreed order when he filed it. The Bankruptcy Noticing Center did not serve Arete Wealth with the agreed order when it was entered. And having never made an appearance in the bankruptcy case, Arete Wealth did not receive an electronic notice from the court's ECF/CM system of either the filing of the motion or entry of the agreed order.

II.

There are two general routes for a creditor to request an extension of the deadline for filing complaints to determine the dischargeability of debts under § 523(a)(2), (4), or (6). The most common requires the filing of a motion "before the time expires," which in such event "the court may, after notice and a hearing and for cause, extend the time to file." Fed. R. Bankr. P. 4007(c). The court's pertinent local rule requires that the movant either set the motion for hearing in accordance with E.D. Tenn. LBR 9013-1(f)(1) or utilize the other method provided by subsection (h)(1)(xii) of the rule, that being a "passive notice procedure whereby no hearing is set or held unless a party in interest objects to the relief requested in the motion." Under either method a movant must present cause in requesting the extension from the court. Establishing cause is not an unusually high bar to clear. However:

> In *Brady*, the Sixth Circuit indicated that a party in interest requesting an extension under Rule 4007(c) "must demonstrate some minimally sufficient showing of cause for the extension." *In re Brady*, 101 F.3d at 1171; *see also In re Sheppard*, 532 B.R. at 676 ("In the Sixth Circuit, discretion is given to the bankruptcy courts to determine the definition of 'cause' on a case-by-case basis, but there is precedent that suggests the threshold for granting such motions should be set low.").… Consequently, when "a creditor fails to use diligence in gathering information pertinent and necessary to filing a complaint, the Bankruptcy Court

> acts within its discretion in denying a motion for an extension of time." *In re Mendelsohn*, 202 B.R. 831, 832 (Bankr. S.D.N.Y. 1996).

*In re Riggs*, No. 22-30575, 2023 WL 1998547, at *7 (Bankr. N.D. Ohio Feb. 14, 2023). If Arete Wealth had chosen to request an extension it would have had to file a motion by the deadline of June 9, 2025, and presented cause to obtain one. The only reason Arete Wealth provides for not filing its complaint by the June 9 deadline is Mr. Chung's statement that "it was … unclear if Thacker had sufficient assets to justify further litigation, especially in light of the significant costs of starting a separate adversarial proceeding in Tennessee." Mr. Thacker states in his affidavit that he disclosed all his assets when he filed the case on March 6, 2025, reflecting "a total real estate value in my case of $1,405,000.00 and total personal property is $1,363,110.00, for a total of all property on Schedule A/B of $2,768,110.00." Arete Wealth had almost three months to consider Mr. Thacker's financial information in the bankruptcy filings and decide whether there were "sufficient assets to justify further litigation." No reason is offered why any more time was needed to make that decision. With no reason for needing additional time, no cause would have existed to grant Arete Wealth an extension of the deadline. Having no cause, any motion by Arete Wealth for an extension of the deadline certainly would not have been granted over Mr. Thacker's objection. *See, e.g., In re Vinson*, 509 B.R. 128, 133-34 (Bankr. S.D. Ohio 2013) (creditor that had monitored but not actively participated in the bankruptcy case denied extension of deadlines for failing to meet its responsibility to pursue its rights diligently).

The other route for extending the deadline is to obtain the debtor's consent and submit an agreed order extending the deadline before it expires, the one taken by Mr. Steele's clients. In traveling this route the court's local rule requires that "[e]very agreed order (whether in connection with a case, contested matter, or adversary proceeding) must be accompanied by an appropriate motion requesting entry of the order …." E.D. Tenn. LBR 9072-1(a). Mr. Steele did this by utilizing E.D. Tenn. LBR 9013-1(g)(1)(xvii) that permits the filing of an ex parte motion "in which the movant certifies that all affected parties have consented to the requested relief." Paragraph 3 of the rule states that "a movant utilizing the ex parte procedure must file a certificate evidencing service of the motion and proposed order on all parties affected by the relief sought." Mr. Steele complied by serving the ex parte motion and the agreed order by mail on Mr. Thacker and electronically through the court's CM/ECF system on Mr. Guinn, the subchapter V and United

States trustees, and two attorneys that had appeared on behalf of secured creditors. After the agreed order was entered, the Bankruptcy Noticing Center served those same parties with the signed agreed order. Mr. Steele did not serve Arete Wealth with the motion and agreed order because it was not "affected by the relief sought" and had not made an appearance in the bankruptcy case. For the latter reason, the Bankruptcy Noticing Center likewise did not serve Arete Wealth with the agreed order after it was entered by the court.

An agreed order is a contract between the parties which has judicial approbation—one to which the court, as ultimate arbiter, has been made a signatory. *See In re Fam. Invs., Inc.*, 8 B.R. 572, 577 (Bankr. W.D. Ky. 1981) ("Agreed orders are no less binding because they are based on compromise of the parties instead of a unilateral judicial act."). "Understanding agreed orders approved by a court as being essentially contractual in nature is a widely shared conventional understanding." *J.E.T., Inc. v. Hasty*, No. M2023-00253-COA-R3-CV, 2024 WL 1156558, at *4 (Tenn. Ct. App. Mar. 18, 2024). Because an agreed order is in the nature of a contract, interpretation of its terms presents a question of contract interpretation. *See City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995) (agreed order entered by bankruptcy court properly considered as a contract made between the parties). In interpreting an agreed cash collateral order, the Sixth Circuit Court of Appeals stated that "[t]he principles of contract interpretation as recognized by this court first require looking to the explicit language of, in this case, the cash collateral order for 'clear manifestations of intent.'" *In re Hughes-Bechtol, Inc.*, 225 F.3d 659 (6th Cir. 2000) (table) (citing *Golden v. Kelsey-Hayes Co.,* 73 F.3d 648, 654 (6th Cir. 1996), *quoting UAW v. Yard-Man, Inc.,* 716 F.2d 1476, 1479 (6th Cir. 1983)). "The court may interpret the order in light of its own understanding of the history of the case and the intention of the parties when they presented the agreed order." *In re Great Lakes Comnet, Inc.*, 569 B.R. 693, 698 (Bankr. W.D. Mich. 2017).

As the agreement embodied in the agreed order between Mr. Thacker and the named creditors was made in Tennessee, the general principles of contract interpretation under Tennessee law are also applicable. *Id.* (applying Michigan law of contracts to agreed bankruptcy sale order). In Tennessee, "[t]he law presumes that a contract is executed for the benefit of the parties thereto and not third persons, and a third person claiming benefits thereunder has the burden of proving

that the contract was made for his benefit." *Rutherford Cnty. v. City of Murfreesboro*, 304 S.W.2d 635, 637 (Tenn. 1957). Arete Wealth seeks the benefit of the extension of the deadline that Mr. Thacker agreed to provide to nine other creditors. Accordingly, Arete Wealth has the burden to prove "from the terms of the [agreed order] or the circumstances surrounding its execution, that, *at the time of contracting*, [it] was an intended third-party beneficiary of the [agreed order]." *Elvis Presley Enters., Inc. v. City of Memphis*, No. W2019-00299-COA-R3-CV, 2022 WL 854860, at *9 (Tenn. App. Mar. 23, 2022) (quoting *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 899 (Tenn. 2016)). "The evidence to confer a benefit must be clear and direct." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 69 (Tenn. 2001). Arete Wealth presents no evidence of any nature that it is an intended beneficiary of the agreed order.

Not only has it not been established that Mr. Thacker and the creditors represented by Mr. Steele intended for Arete Wealth to receive the benefit their agreed upon extension, Arete Wealth's interpretation of the language in the agreed order that it "broadly extended the deadline for dischargeability complaints" is unreasonable. Mr. Chung states "[t]here was nothing in the Order that limited the relief granted to any specific creditors," but quotes only the second sentence reciting that "the deadline to file a complaint for determination of dischargeability of debt pursuant to 11 U.S.C. §523 in this case, originally set for June 9, 2025 shall be extended for sixty (60) days through and including **August 8, 2025.**" Isolating the second sentence from the first, Arete Wealth submits that the "inclusion of the term 'in this case' serves no other purpose other than to unambiguously expand the scope of the extension to all creditors, not just the movants" and therefore "this language created a plain and unambiguous extension for all creditors intending to file dischargeability complaints in the Thacker bankruptcy." The logic which Arete Wealth engages to arrive at this conclusion is that "there was no other pending bankruptcy or other 'case' that the proposed order needed to carve out." However, inclusion of the descriptive phrase "in this case" no more expands the scope of an extension than elimination of the phase reduces it. For example, in the two cases touted by Arete Wealth, *Donegal Mutual Insurance Companies v. Watkins (In re Watkins)*, 365 B.R. 574 (Bankr. W.D. Penn. 2007), and *Marshall v. Demos (In re Demos)*, 57 F.3d 1037 (11th Cir. 1995), neither order by the courts granting an extension employed the language "in this case." *Cf. In re Watkins,* 365 B.R. at 577 ("It is ORDERED that the time to file objection to discharge or dischargeability is extended until further order of Court."); *In re*

*Demos*, 57 F.3d at 1039 ("That the deadline for filing 'Complaints to Determine Dischargeability and Objecting to Discharge' be, and the same is hereby, extended be, up to and including March 15, 1993."). Yet, both orders were interpreted as granting an extension not just for the movants but for all creditors. *Id.* Applying the logic of Arete Wealth, both the *Watkins* and *Demos* courts erroneously interpreted the language of the orders as extending to all creditors.

Arete Wealth states that "if Thacker or Steele wanted to extend the deadline for only Steele's clients, they could have easily done so by … language extending the deadline for those creditors alone," termed by Arete Wealth as a "carve out." But including a "carve out" would have been superfluous in light of the preceding sentence reciting that the parties "jointly announce to the Court that the parties have reached an agreement to extend" and that they "are in agreement to extend the deadline to file such complaints in this case." Arete Wealth's isolated focus on the second sentence, while ignoring the preceding one, evades consideration of the context of the agreed order in its entirety and thereby violates a long-standing rule of construction. *See, e.g., In re Great Lakes Comnet, Inc.*, 569 B.R. at 698 ([E]ach provision [of the agreed order] should be construed consistently with the entire document ….") (quoting *Ohio Farmers Ins. Co. v. Hughes–Bechtol, Inc. (In re Hughes Bechtol, Inc.)*, 225 F.3d 659, 2000 WL 1091509, at *8 (6th Cir. July 27, 2000)); *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. App. 1996) ("[C]ourts must examine the text of the contract in the context of the entire agreement."). Instead of a "focus" only on the "plain language" in the second sentence as Arete Wealth urges, the court must consider the entirety of the agreed order "in light of [the court's] own understanding of the history of the case and the intention of the parties when they presented the agreed order." *In re Great Lakes Comnet, Inc.*, 569 B.R. at 698.

Mr. Steele states that he prepared both the motion and the agreed order and that they "were filed to obtain an extension of time for my clients to file complaints to determine dischargeability of my clients' claims pursuant to 11 U.S.C. §523." Arete Wealth responds that "Steele's intent … is beside the point because the plain unambiguous language of the Order governs." However, Mr. Steele's intent is manifested in and is entirely consistent with the language of both the motion and agreed order. The motion that specifically names each of the nine creditors represented by Mr. Steele (referenced collectively as the "Unsecured Creditors")

recites that "the Unsecured Creditors and the Debtor, JACK ROBERT THACKER, JR., by and through counsel, have agreed to the entry of an Agreed Order Extending Deadline to File Complaints to Determine Dischargeability of Debt. A copy of the proposed Agreed Order is attached hereto as Exhibit A." (Emphasis supplied.) The motion concludes by stating "the Unsecured Creditors request the Court enter the Agreed Order Extending Deadline to File Complaints to Determine Dischargeability of Debt attached hereto and submitted herewith." The agreed order introduces both Mr. Thacker and each of nine creditors represented by Mr. Steele before stating that they "by and through their respective legal counsel … hereby jointly announce to the Court that the parties have reached an agreement to extend the deadlines for the filing of a complaint for determination of dischargeability of debt pursuant to 11 U.S.C. §523 and are in agreement that the deadline to file such complaints in this case, originally set for June 9, 2025, should be extended for sixty (60) days to August 8, 2025." (Emphasis supplied.)

The joint announcement in the agreed order that Mr. Thacker, Terry and Sharon Vaughn, Kent and Nancy Crow, Darrell and Joan Vincent, Thomas and Diann Elliott, and Don Lair have reached an agreement to extend the deadline is unambiguous. The agreement whereby Mr. Thacker consented to an extension for the named creditors was made for the named creditors only. When the motion for entry of the agreed order was filed the court understood that cause existed for an extension of the deadline for Mr. Steele's clients because Mr. Steele and Mr. Guinn needed more time to negotiate a settlement of the outstanding issues between their clients without the necessity of those nine creditors having to file complaints by the June 9 deadline and the debtor having to answer them. On entering the agreed order the court also understood that the parties to the agreement contemplated an extension of the deadline only for the creditors to whom Mr. Thacker had consented to provide an extension, those being specifically identified in both the motion and the agreed order as "**TERRY VAUGHN and SHARON VAUGHN, KENT CROW AND NANCY CROW, DARRELL VINCENT AND JOAN VINCENT, THOMAS ELLIOTT AND DIANN ELLIOTT, AND DON LAIR,** (collectively, the 'Unsecured Creditors')". The court construes the agreed order no differently today than when it entered the agreed order—the extension of the deadline was only for the "Unsecured Creditors" specifically named in the agreed order. The agreed order embodies an agreement to extend the deadline made between Mr. Thacker and the nine creditors represented by Mr. Steele. There is no evidence

indicating that the agreed extension of the deadline was for the benefit of any creditor other than those who were parties to the agreement, or that any cause existed for extending the deadline for any creditors not named in the agreed order, including Arete Wealth.

The *Watkins* and *Demos* decisions provide no basis to interpret the agreed order any differently. Arete Wealth offers the cases to support its statement that "[w]here courts in other circuits have encountered orders that are not limited to the movant and where other creditors reasonably rely on those orders, they have focused on the 'plain language' and applied extensions to all creditors." Reliance on the cases to show that the extension of the deadline here was universal ignores the fact that Mr. Steele's clients obtained their extension by consent of Mr. Thacker, not by the court granting a motion for an extension for cause. In addition to this important distinction, the issues and facts in the two decisions could not be more different from those here. When the orders were entered to extend the deadlines in those cases, cause existed to extend it for all creditors.

The issue in *Watkins* was "whether the bankruptcy court has discretion to extend the time for all creditors to commence an adversary proceeding under § 523 or § 727 based on a motion by a single creditor." *In re Watkins*, 365 B.R. at 577. The decision was fact-specific. The plaintiff in an adversary proceeding seeking the recovery of property from the debtor sought to amend its complaint to include claims objecting to discharge and to determine the dischargeability of debt. The plaintiff asserted that the additional claims should either relate back to the filing of the complaint on the premise that the debtor had been on notice of the nature of the claims before the passage of the deadlines or be considered timely filed based on an extension granted to another creditor on its Rule 4007(c) motion. *Id.* at 576. Because the court had granted the motion ex parte on its filing, a hearing was scheduled after the debtor objected to the extension. At the hearing the debtor acknowledged that granting the motion was appropriate for the filing creditor, but not for the plaintiff and two other creditors that had sought to "join in" the motion after the deadline had passed. *Id.* The court continued the hearing as to the other creditors' request for an extension, indicating that the deadlines could be extended at that time, but then continued the hearing again after the chapter 7 trustee announced that a Rule 2004 exam of the debtor was to be conducted regarding potentially undisclosed assets. *Id.* After the second continuance the court

entered an order stating: "It is ORDERED that the time to file objection to discharge or dischargeability is extended until further order of Court." *Id.* at 577. When called on later to interpret the order, the court stated that "[t]he intent was to leave open the time for objections under § 727 or § 523 for all creditors pending the Trustee's investigation of the relevant facts." *Id.* The court explained:

> The Trustee's indication that a Rule 2004 examination was going to be conducted to investigate information about potentially undisclosed assets and that all interested parties would be advised of the date and time of the Rule 2004 examination so that they might participate constitutes sufficient "cause" for an order extending the time for all creditors.
>
> As a result of the Trustee's comments and the interest of creditors indicated by their participation in the hearings on this matter, the order which was entered that provides "the time to file objection to discharge or dischargeability is extended until further order of Court." The plain meaning of this language, especially in light of the hearing, is that an extension of time was granted to all creditors.

*Id.* at 577-78. The holding by the court in *Watkins* that it had discretion based on cause to extend the deadlines for all creditors on a single creditor's timely filed Rule 4007(c) motion has no bearing on the facts in this case.

The *Demos* decision does not involve an extension granted under Rule 4007(c). In a "Motion to Extend the Times for Objections to Claimed Exemptions and Complaints to Determine Dischargeability and Objecting to Discharge," the chapter 7 trustee, after "[c]alling the court's attention to the problems created by the large numbers of 'creditors' involved in the bankruptcy and the possibility that the Debtor's attorney might not be able to attend the 2004 examination of the Debtor," asked that "the court exercise its equitable power to extend the time for filing complaints." *In re Demos*, 57 F.3d at 1039. Instead of a motion being made under either Fed. R. Bankr. P 4004(b) or 4007(c) respectively to extend the deadlines for filing complaints objecting to discharge or to determine the dischargeability of debt, the trustee's motion joined by the debtor was made pursuant to and granted by 11 U.S.C. § 105 which "authorizes the bankruptcy court to 'issue any order that is necessary or appropriate to carry out the provisions of the bankruptcy code.'" *Id.* (quoting 11 U.S.C. § 105 with alterations). After a creditor filed a nondischargeablity complaint by the extended deadline, the debtor through his new attorney moved to dismiss the complaint, arguing that the creditor could not take advantage of the trustee's

extension of the deadlines because the creditor had not separately moved for one. *Id.* at 1038. The bankruptcy court and the district court agreed. The Fifth Circuit Court of Appeals reversed, stating that postponement of the Rule 2004 exam "might jeopardize creditors' rights to file their adversary complaints or compel them to file when the 2004 proceeding might have persuaded them not to do so." *Id.* Whether it was reasonable for the creditor to rely on the order, the court determined:

> Of course, the reliance of a party on an order must be reasonable. A party may not rely on an order that clearly has nothing to do with him. In this case, it was entirely reasonable for Marshall to rely on the bankruptcy court's order. The Trustee's motion, *joined by the Debtor,* and served on Marshall, stated:
>
>> 7. That there are *numerous interested parties* and attorneys who wish to attend the 2004 Examination of the Debtor which would be after the deadline for exemptions and the deadline for determining dischargeability and objecting to discharge.
>>
>> 8. That *due to the large numbers of creditors* involved in this bankruptcy proceeding, the Debtor's attorney and the Trustee have no objection to the said extension.

*Id.* at 1039. The order granting the trustee's motion stated "[t]hat the deadline for filing 'Complaints to Determine Dischargeability and Objecting to Discharge' be, and the same is hereby, extended up to and including March 15, 1993." Observing that only creditors—not a chapter 7 trustee—may file complaints to determine the dischargeability of debts, the court held that "[t]he plain meaning of this language is that an extension of time was granted to creditors—all creditors." *Id*. at 1039-40. Alternatively, the circuit court held that "[i]f the bankruptcy court did not intend to grant creditors an extension of time—as the district court found—then the bankruptcy court made a mistake, and it should have exercised its equitable powers under Section 105 to allow [the] complaint to stand." *Id*. at 1040.

This court agrees that a bankruptcy court may extend the deadline for filing a complaint to determine the dischargeability of debt for all creditors on a single creditor's timely filed Rule 4007(c) motion, and recognizes the authority provided under 11 U.S.C. § 105 to exercise the equitable power to extend such a deadline on behalf of all creditors. But doing so is proper only if cause exists. *See, e.g., In re Pizzuti*, No. 6:10-BK-12098-ABB, 2011 WL 43530, at *2-3 (Bankr. M.D. Fla. Jan. 6, 2011) (court exercised equitable powers under § 105 to extend deadlines

for all creditors on motions made under Rules 4004 and 4007 by chapter 7 trustee and seven creditors for cause based on the complexity of the case involving a network of interrelated entities and substantial unsecured debt, the significant number of general unsecured creditors, the debtors' inability at the meeting of creditors to explain certain representations in their bankruptcy papers and to answer almost any questions related to their various investment companies, the filing of several motions to conduct Rule 2004 examinations of the debtors, many of the creditors appeared to be unsophisticated in financial and bankruptcy matters and were unrepresented by counsel, and the unrepresented creditors and parties in interest were looking to the trustee and the represented parties for direction as to how to proceed in the case). Apart from the distinction that the extension here was not granted on a Rule 4007(c) motion or one made pursuant to § 105, but was set forth in an agreed order between Mr. Steele's clients and Mr. Thacker, the principal difference between the facts of the cases cited by Arete Wealth and those before this court is that cause existed for courts in *Watkins* and *Demos* to extend the deadlines for all creditors at the time the orders were entered. When the motion for entry of the agreed order in Mr. Thacker's case was filed and the proposed agreed order submitted, cause did not exist for this court to extend the deadline for all creditors. In Mr. Thacker's bankruptcy case, he consented to an extension of the deadline only for Mr. Steele's clients so the parties could work towards resolution of the named creditors' claims to achieve a consensual confirmation of a plan. As explained by the *Vinson* court when denying for lack of cause a motion to extend the deadlines imposed by Rules 4004 and 4007 for filing complaints:

> [T]treatment of one creditor does not dictate the treatment appropriate for another. As aptly pointed out by Debtors, to extend the deadlines for one creditor just because a debtor agreed to an extension for another would emasculate the requirement of cause in Rules 4004 and 4007. Further, it would chill a debtor's willingness to work in a cooperative fashion with creditors who diligently act to pursue their rights, because that debtor could then be penalized by other creditors jumping on the bandwagon even though they did not act diligently.

*In re Vinson*, 509 B.R. at 133-34.

III.

Alternatively, Arete Wealth states that "if this Court were to determine that the extension order applies only to the movant unsecured creditors …, this Court should use its equitable powers

to allow Arete's adversary proceeding to continue." Arete Wealth's request asks the Court to apply the doctrine of equitable tolling. "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Martin v. Thompson (In re Thompson)*, No. 1:18-ap-1018-SDR, 2018 WL 4201752, at *5 (Bankr. E.D. Tenn. Aug. 15, 2018) (quoting *Hollis v. Ardahji (In re Ardahji)*, No. 14-30519, 2015 WL 1865634 (Bankr. E.D. Tenn. Apr. 2, 2015)). "The doctrine is 'intended to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Id.*

"In *In re Maughan*, the Sixth Circuit identified the following factors for a court to consider when determining whether the doctrine of equitable tolling should be applied to excuse a plaintiff's missing the Rule 4007(c) deadline: '(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.'" *Id.* at *9 (quoting *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 344 (6th Cir. 2003)). A couple of years after *Maughan* the United States Supreme Court stated that "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, (2005) (discussing standard in the context of the statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 for filing a federal habeas corpus petition). Because here, as in *Thompson*, notice of the deadline is not an issue, "[w]hether the court considers the factors set out in *In re Maughan* or in *DiGuglielmo*, the analysis is essentially the same …." *In re Thompson*, 2018 WL 4201752, at *4.

As previously discussed, Arete Wealth's excuse for not filing its complaint by the June 9 deadline was that "it was … unclear if Thacker had sufficient assets to justify further litigation, especially in light of the significant costs of starting a separate adversarial proceeding in Tennessee." Had Arete Wealth been diligent in pursuing its rights it would have timely filed its complaint. No circumstance, extraordinary or not, stood in the way of Arete Wealth filing its complaint by June 9, 2025. Arete Wealth, a legally sophisticated entity having a compliance officer and general counsel on board, knew or should have known the consequences of not meeting

a deadline to file a complaint. Mr. Chung's affidavit does not factually establish that Arete Wealth was even aware of the agreed order before the deadline passed. But if it was, Arete Wealth decided to risk the consequences of letting the June 9 deadline pass.

Arete Wealth states in a footnote that "if Thacker is correct that the true intention of the Order was to restrict it to the nine creditors who filed the May 19 motion, then the Order … erroneously excluded language so cabining the extension," which "in that case, Arete would be entitled to rely on the plain language of the Court's Order, just like the creditors in *Isaacman*, *Anwiler*, and *Themy*." In the preceding section of this opinion the court rejected Arete Wealth's interpretation that the agreed order "broadly extended the deadline for dischargeability complaints." The court determined that the agreed order embodied an agreement to extend the deadline made between Mr. Thacker and the nine creditors represented by Mr. Steele, and therefore the extension of the deadline was only for the creditors specifically identified in the agreed order. Therefore, there was no "carve out" or "cabining" required to limit the extension for Mr. Steele's clients alone as Arete Wealth insists.

The cases cited by Arete Wealth, all inapposite, involve a court's application of its equitable power to overcome a mistake by the court. In *Isaacman*, the bankruptcy court clerk's office erroneously informed plaintiff's attorney that a second bar date for filings complaints had been set in a transferred case. The Sixth Circuit Court of Appeals concluded "that where a bankruptcy court erroneously sets a second bar date for the filing of complaints to determine the dischargeability of a debt before the first bar date has expired and where a creditor, reasonably relying on that second date, files a complaint before the expiration of the second bar date, the bankruptcy court abuses its discretion if it fails to exercise its equitable powers and permit the complaint to proceed." *In re Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 636 (6th Cir. 1994). In *Anwiler*, two notices setting conflicting deadlines for filing complaints were sent to the parties by two separate courts. *In re Anwiler*, 958 F.2d 925, 926 (9th Cir. 1992), *as amended on denial of reh'g* (Apr. 8, 1992), *cert. denied,* 506 U.S. 882 (1992). The Ninth Circuit Court of Appeals agreed that the bankruptcy court had the equitable power to permit the complaint to proceed despite its untimely filing by the first deadline. *Id.* at 929. *Themy* likewise involved two notices setting different deadlines for filing complaints. *In re Themy*, 6 F.3d 688, 689 (10th Cir.

1993). The Tenth Circuit Court of Appeals concluded that the bankruptcy court acted appropriately when it exercised its equitable power to permit the complaint filed by the second deadline to proceed. *Id*. at 690. The common theme throughout the three cases is best summed up in *Themy* in that "although the burden of protecting one's rights is ordinarily placed on the creditor, when the court's act affirmatively misleads the creditor as to a deadline, the court bears responsibility for correcting its error." *Id.*

Arete Wealth was not informed by the bankruptcy court clerk's office of conflicting deadlines for filing its complaint. It was informed by the clerk's office of one deadline, that being June 9, 2025. Arete Wealth claims that it relied on a statement by the court of an extended deadline. Arete Wealth was in no way misled by the court. The court did not serve the agreed order on Arete Wealth. Arete Wealth's decision not to file its complaint by the deadline had consequences then. No basis exists for equitably permitting Arete Wealth to avoid those consequences now. Allowing the untimely filed complaint to proceed would be inequitable to the nine creditors that timely sought their extension and to Mr. Thacker who consented only for an extension for those nine creditors. Allowing the untimely filed complaint to proceed would undoubtedly cause the estate to incur greater costs, reduce the amount the estate will distribute to creditors, and delay Mr. Thacker's fresh start. Core policies of bankruptcy law include obtaining a maximum equitable distribution for creditors and ensuring a "fresh start" for individual debtors. *See BFP v. Resol. Tr. Corp.,* 511 U.S. 531, 563 (1994). Neither law nor core bankruptcy policies favor Arete Wealth's position. Granting Arete Wealth's request for equitable relief would effectively punish the parties who worked together to confirm a reorganization plan, as well as any creditors receiving distributions under the plan.

IV.

Rule 56 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Fed. R. Bankr. P. 7056. Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). There are no genuine issues at to any material fact. The Notice of Chapter 11 Bankruptcy Case issued by the clerk of court on the day Mr. Thacker filed his petition informed all creditors that the deadline for filing a complaint to except a debt from discharge under 11 U.S.C.

§ 523(a)(2), (4), or (6) was June 9, 2025. Arete Wealth let the deadline pass. The only explanation offered by Arete Wealth for not filing its complaint by the deadline was because "it was … unclear if Thacker had sufficient assets to justify further litigation, especially in light of the significant costs of starting a separate adversarial proceeding in Tennessee." Nine other creditors obtained Mr. Thacker's consent for an extension of the deadline. The agreement between those creditors and Mr. Thacker is embodied in an agreed order. The only issue is the legal one of whether the agreed order extended the deadline for all creditors, or just the creditors that were parties to the agreed order. The deadline was extended for those nine creditors specifically named in the agreed order. No equitable basis exists for permitting Arete Wealth to proceed with its untimely filed complaint. Any liability of Mr. Thacker on Arete Wealth's alleged claim was discharged by Mr. Thacker's plan confirmed under 11 U.S.C. § 1191(a). An order will be entered contemporaneously with the filing of this opinion granting summary judgment to Mr. Thacker and dismissing Arete Wealth's complaint.

# # #